MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
SPRINGLEAF FINANCIAL SERVICES, INC.; THE LAW OFFICES OF TODD L. CRAMER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION

| | |
|---|---|
| MARY GRACE DULLAS,<br><br>Plaintiff,<br><br>vs.<br><br>SPRINGLEAF FINANCIAL SERVICES, INC.; THE LAW OFFICES OF TODD L. CRAMER,<br><br>Defendants. | Case No. 5:14-cv-00451<br><br>**POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION**<br><br>Filed concurrently with Notice; Declaration of Mark Andretich; Declaration of Austin B. Kenney; [Proposed] Order<br><br>Date:   May 19, 2014<br>Time:   9:00 a.m.<br>Dept.:  1<br>Judge:  The Hon. Jesus G. Bernal<br><br>Action Filed:  March 7, 2014<br>Trial Date:    None |

06085.0105/3213167.1                                                                        5:14-cv-00451
POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. STATEMENT OF FACTS....................................................................................2

    A. The Loan Agreement Contains a Conspicuous Arbitration Agreement. ...................................................................................................2

    B. Borrower Has Refused To Arbitrate The Related Cases Between Her And Springleaf. ...................................................................................5

III. LEGAL STANDARDS .........................................................................................5

IV. ARGUMENT ........................................................................................................7

    A. The Federal Arbitration Act Governs This Motion. ................................7

    B. The Court *Must* Compel Arbitration Because The Parties Agreed to Arbitrate And Their Dispute Falls Within The Scope Of The Agreement. ................................................................................................8

        1. Any Threshold Dispute Concerning Arbitrability, Or The Validity Or Enforceability Of The Arbitration Agreement, Must Be Decided By The Arbitrator. ..........................................8

        2. The Loan Agreement Contains A Valid And Enforceable Arbitration Agreement. ................................................................9

        3. Borrower's Claims Against Defendants Are "Covered Claims" Under The Arbitration Agreement. .............................10

    C. This Litigation Should Be Dismissed Without Prejudice Pending Completion of Arbitration In Accordance With Federal Law...............11

    D. Alternatively, This Litigation, Including All Discovery, Must Be Stayed Pending Completion of Arbitration To Avoid Prejudice And To Preserve Judicial Economy.......................................................12

V. CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alabama v. Randolph*,
    531 U.S. 79 (2000) .................................................................................................. 7

*Alford v. Dean Witter Reynolds, Inc.*,
    975 F.2d 1161 (5th Cir. 1992) ............................................................................. 12

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................................ 7, 8

*AT&T Mobility, LLC v. Concepcion*,
    131 S.Ct. 1740 (2011) ("*Concepcion*") ...................................................... 6, 7, 8

*AT&T Technologies, Inc. v. Commc'n Workers of Am.*,
    475 U.S. 643 (1986) ............................................................................................ 10

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) .............................................................................................. 7

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ................................................................................................ 7

*Collins v. Burlington N. R.R. Co.*,
    867 F.2d 542 (9th Cir. 1989) ............................................................................. 12

*CompuCredit Corp. v Greenwood*,
    132 S.Ct. 665 (2012) ............................................................................................ 7

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ("*Byrd*") ......................................................................... 6, 9

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ("*First Options*") ........................................................ 9, 10

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    130 S.Ct. 2847 (2010) .......................................................................................... 9

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003) .............................................................................................. 7

*Hall Street Associates, LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008) ........................................................................................... 7

*Monzon v. So. Wine & Spirits of Cal.*,
    834 F. Supp. 2d 934 (N.D. Cal. 2011) ............................................................... 11

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ("*Moses H. Cone*") ........................................................... 6, 12

*Perry v. Thomas*,
    482 U.S. 483 (1987) ............................................................................................. 6

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ............................................................................................. 8

*Rent-A-Center West, Inc. v. Jackson*,
    130 S.Ct. 2772 (2010) ................................................................................. 6, 8, 9

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) .............................................................................................. 6, 8

*Sparling v. Hoffman Constr. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ............................................................................. 12

*Thinkjet Ink Info. Res. Inc. v. Sun Microsys., Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ........................................................................... 12

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ........................................................................................... 10

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ............................................................................................. 8

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996) ............................................................................. 10

**STATE CASES**

*Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*,
    6 Cal.App.4th 1266 (1992) ................................................................................ 10

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*,
    35 Cal.3d 312 (1983) ......................................................................................... 11

*Parker v. Twentieth Century-Fox Film Corp.*,
   118 Cal.App.3d 895 (1981) .................................................................................. 10

**FEDERAL STATUTES**

9 U.S.C.
   § 1 ............................................................................................................................ 2
   § 2 ................................................................................................................... 7, 5, 8
   § 3 .................................................................................................................. 11, 12
   § 4 ............................................................................................................................ 8

15 U.S.C.
   § 1692 ...................................................................................................................... 7

**RULES**

Federal Rules of Civil Procedure
   Rule 12(b)(6) .......................................................................................................... 2

**OTHER AUTHORITIES**

*Springleaf Financial Services, Inc. v. Dullas*,
   Case No. CIVDS1315083 ...................................................................................... 1

# I.

# INTRODUCTION

This action stems from claims by plaintiff MARY GRACE DULLAS ("Borrower") against defendants SPRINGLEAF FINANCIAL SERVICES, INC. ("Springleaf") and THE LAW OFFICES OF TODD L. CRAMER ("Cramer") (collectively, "Defendants") for statutory damages resulting from Defendants' alleged violations of the federal Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). Defendants now move to compel arbitration of the parties' dispute pursuant to a written agreement and to dismiss or stay the action in its entirety pending the arbitration's completion.[1]

Well-established precedent dictates that a motion to compel arbitration and dismiss (or stay) litigation *must* be granted where there is a valid arbitration agreement, and the claims alleged fall within the scope of that agreement. This is the case here.

Borrower entered into a valid and enforceable Loan Agreement with Springleaf in December 2012. The Loan Agreement includes a one-and-a-half-page Arbitration Agreement and Waiver of Jury Trial. All of Borrower's claims against Springleaf and Cramer are "Covered Claims" under the Arbitration Agreement because (i) they arise out of the parties' agreement and (ii) they arise under federal

---

[1] A related action is currently pending in Superior Court for the State of California, County of San Bernardino, entitled *Springleaf Financial Services, Inc. v. Dullas*, Case No. CIVDS1315083. Springleaf filed that lawsuit to collect on a debt owed by Plaintiff. Springleaf has moved to compel arbitration in that case, too, pursuant to the parties' agreement. Springleaf's counsel met and conferred with Borrower's counsel in an effort to secure stipulations to stay both actions and arbitrate them in a consolidated proceeding for the sake of convenience and judicial economy. However, Borrower has refused to stipulate to arbitration, despite her contractual obligations. Declaration of Austin B. Kenney, ¶¶ 4-8.

and state law.  Thus, they are subject to mandatory, binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").

In addition to compelling arbitration, the Court should also dismiss Borrower's claims without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the court may dismiss the action when all claims are subject to arbitration.  Alternatively, the Court should stay this action in its entirety, including all discovery, pending completion of arbitration.  Allowing this action and arbitration to proceed concurrently will prejudice all parties because inconsistent judgments could be reached in the concurrent proceedings.  At the very least, staying the litigation would preserve judicial economy by avoiding the multiplicity of claims, discovery, costs and judgments that would result from allowing concurrent proceedings.

## II.

## STATEMENT OF FACTS

**A.     The Loan Agreement Contains a Conspicuous Arbitration Agreement.**

On December 20, 2012, Springleaf and Borrower entered into a written contract ("the Loan Agreement") whereby Springleaf agreed to loan money to Borrower as consideration for monthly payments on the unpaid principal balance, plus interest.  Borrower signed the Loan Agreement as a "Borrower".  *See* Declaration of Mark Andretich ("Andretich Decl."), Ex. A, p. 1.

The Loan Agreement includes and incorporates by express reference a conspicuous, Arbitration Agreement and Waiver of Jury Trial ("Arbitration Agreement") pursuant to which Springleaf and Borrower agreed to submit to binding arbitration "all claims and disputes between" them (hereinafter, "Covered Claims").  Andretich Decl., ¶ 7.  Covered Claims include, but are not limited to "all claims and disputes arising out of, in connection with, or relating to" the following:

> <u>This Agreement with Lender</u>; any previous retail credit agreement ("Retail Contract") assigned to Lender and any previous loan from or assigned to Lender . . . ; <u>whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement</u> . . . and the [Loan] Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the [Loan] Agreement; . . . <u>the closing, servicing, collecting, or enforcement of any transaction covered by this Arbitration Agreement</u>; . . . <u>any claim based on or arising under any federal, state or local law, statute, regulation, ordinance, or rule</u>; . . . any claim or dispute based on any alleged tort (wrong), including intentional torts; any claim for damages or attorneys' fees; and any claim for injunctive, declaratory, or equitable relief.

*Id.*, Ex. A, p. 5 (emphasis added).

The Arbitration Agreement also covers third-party claims:

> This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors . . . . <u>In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Arbitration Agreement, provided that the third party is required to agree to resolve such claims by arbitration.</u>

Andretich Decl., Ex. A, p. 5 (emphasis added).

The Arbitration Agreement is approximately one-and-a-half pages long. Borrower initialed the first page and signed on the second page, in addition to initialing or signing the other pages of the Loan Agreement. At the end of the arbitration provisions, set off in bold, block lettering is the following recital:

> **I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

Andretich Decl., Ex. A, p. 6 (emphasis in original).  The agreement also expressly states, "The Federal Arbitration Act applies to and governs this agreement.  State arbitration laws and procedures shall not apply to this Arbitration Agreement." *Id*.

The Loan Agreement itself includes several clear references to the arbitration clause set forth above.  In boldfaced capital letters above Borrower's signatures on Page 1 of the Loan Agreement, the following advisement appears:

> **THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

Andretich Decl., Ex. A, p. 1 (emphasis in original).

Furthermore, in boldfaced and capital letters immediately above the signature block on Page 6 of the Loan Agreement (also the second page of the Arbitration Agreement), the contract provides:

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTAND AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR AND THE DECISION OF THE ARBITRATOR WILL BE FINAL.  ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.**

Andretich Decl., Ex. A, p. 6 (emphasis in original).  Borrower signed the Loan Agreement, indicating that she received "a fully completed, legible copy of all of the documents comprising this Agreement" and expressly agreed to all of its terms, including the foregoing arbitration provisions. *Id*.

### B. Borrower Has Refused To Arbitrate The Related Cases Between Her And Springleaf.

Borrower eventually defaulted on her loan from Springleaf. Springleaf then made various efforts to collect the unpaid debt, including hiring Cramer to collect the debt. Andretich Decl., ¶ 9.

Cramer filed a lawsuit on Springleaf's behalf on December 17, 2013, asserting causes of action for breach of contract and common counts. Borrower failed to timely respond to the Complaint, and a default judgment was entered in Springleaf's favor on February 26, 2014. Declaration of Austin B. Kenney, Esq. ("Kenney Decl."), ¶ 5.

On March 7, 2014, Borrower filed this lawsuit against Springleaf and Cramer, seeking statutory damages for alleged violations of the FDCPA and Rosenthal Act in connection with Springleaf's alleged debt collection efforts.

Springleaf (along with Cramer) has moved to compel arbitration in both cases pursuant to the parties' agreement. Defendants, by and through their attorneys of record, attempted to meet and confer with Borrower's counsel regarding a proposed stipulation to arbitrate the parties' dispute. Specifically, Springleaf offered to stipulate to set aside the default in the state court case in exchange for Plaintiff's agreement to stay both cases and arbitrate the parties' affirmative claims in a consolidated proceeding, pursuant to the parties' written agreement, for the sake of convenience and judicial economy. Borrower refused to stipulate and provided no reasons for her refusal. Defendants bring this Motion in order to enforce their arbitration rights. . Kenney Decl., ¶¶ 4-8.

## III.

## LEGAL STANDARDS

"In enacting §2 of the [Federal] Arbitration Act, Congress declared a national policy favoring arbitration and … mandated the enforcement of arbitration

agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010) (internal citation omitted); accord: *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1745-46 (2011) ("*Concepcion*").

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-5 (1983) ("*Moses H. Cone*"). The FAA's "liberal federal policy favoring arbitration agreements" also requires that they be enforced "notwithstanding any state substantive or procedural policies to the contrary." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (citations omitted).

If the FAA applies and the arbitration clause covers the dispute at the issue, as is the case here, the court *must* compel arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("*Byrd*") (the FAA "leaves no place for the exercise of discretion by a . . . court, but instead mandates that . . . courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis in original)). It has no discretion to do otherwise. Any questions or doubts about the arbitrability of a dispute *must* "be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or [a] . . . defense to arbitrability."[2] *Moses H. Cone*, 460 U.S. at 24-5.

---

[2] Following these well-settled rules, courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in consumer contracts like the one here between Borrower and Springleaf. *See e.g.*, (footnote continued)

## IV.

## ARGUMENT

**A.    The Federal Arbitration Act Governs This Motion.**

The FAA applies to any arbitration clause in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The United States Supreme Court has repeatedly interpreted the quoted phrase as signaling Congress's intent to exercise its Commerce Clause powers to the fullest. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995). The FAA thus "makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce' [citation omitted] [a]nd this is so whether an agreement has a broad reach or goes just to one dispute . . . ." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

Borrower's loan from Springleaf easily meets this standard. Congress has authority to and does in fact regulate such transactions—as illustrated by the FDCPA, among other legislation. *See e.g.*, 15 U.S.C. § 1692. Courts have regularly found that consumer lending falls within Congress's power to regulate interstate commerce. Here, Borrower, a California resident, obtained a loan from Springleaf and is obligated under the loan's terms to make payments to Springleaf, a Delaware corporation. *See* Andretich Decl., ¶ 2. Accordingly, there can be no serious dispute as to the applicability of the FAA here.

Applying the FAA is also consistent with the parties' agreement. By its express terms, the Loan Agreement—and the Arbitration Agreement it contains—

---

*CompuCredit Corp. v Greenwood*, 132 S.Ct. 665 (2012) (credit card agreement); *Concepcion*, 131 S.Ct. 1740 (cell phone services contract); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (consumer loan agreement); *Alabama v. Randolph*, 531 U.S. 79 (2000) (finance contract for purchase of mobile home); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan); *Dobson*, 513 U.S. 265 (termite protection contract).

are governed by and enforceable under the FAA. Andretich Decl., Ex. A, p. 1 ("THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT."). As the FAA's primary purpose is to enforce the parties' contractual expectations regarding arbitration (*see Concepcion*, 131 S.Ct. at 1745-46), honoring the express choice of arbitration law promotes the FAA's policy objectives. *See e.g.*, *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (applying FAA's procedural rules pursuant to choice-of-law clause); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted.").

### B. The Court *Must* Compel Arbitration Because The Parties Agreed to Arbitrate And Their Dispute Falls Within The Scope Of The Agreement.

In light of the strong federal policy favoring arbitration, the determination of a motion to compel arbitration under the FAA involves a simple two step inquiry: (1) whether the parties agree to arbitrate; and (2) whether the dispute falls within the scope of the arbitration provision. 9 U.S.C. §§ 2, 4; *Southland*, 465 U.S. at 10; *Dobson*, 513 U.S. at 273-77. If the answer to both questions is "yes," then the FAA compels arbitration.

#### 1. Any Threshold Dispute Concerning Arbitrability, Or The Validity Or Enforceability Of The Arbitration Agreement, Must Be Decided By The Arbitrator.

As an initial matter, whether the parties' dispute is arbitrable is not for this Court to decide. Where an arbitration agreement (as here) contains a provision delegating to an arbitrator the decision concerning the enforceability of the arbitration agreement and whether a claim or dispute must be arbitrated, the arbitrator has *exclusive* authority to determine those issues. *Rent-A-Center*, 130

S.Ct. at 2776; *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2855-56 (2010) (same).

In *Rent-A-Center*, the Supreme Court recognized that "parties can agree to arbitrate 'gateway' provisions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." 130 S.Ct. at 2776 (citations omitted). A party's intent to delegate issues of arbitrability to an arbitrator must be demonstrated by "clear and unmistakable evidence." *Id.*, citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("*First Options*"). If a court concludes that the parties intended such a delegation, its work is finished and it must compel arbitration on issues relating to arbitrability, along with the underlying dispute, without addressing the merits of any challenge to arbitrability. *Id.* at 2778; *see also Byrd*, 470 U.S. at 218 ("courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis in original)).

Here, the express terms of the Arbitration Agreement clearly and unmistakably delegate to the arbitrator the determination of whether Borrower's claims are subject to arbitration. *See* Andretich Decl., Ex. A, p. 5 ("Claims and Disputes Covered"). Consequently, it is the arbitrator, not this Court, that must consider whether Borrower's claims are subject to arbitration, and this Court must compel arbitration on these issues, *along with the underlying dispute*, without addressing the merits on the issue of arbitrability.

**2. The Loan Agreement Contains A Valid And Enforceable Arbitration Agreement.**

Even if the parties' Arbitration Agreement did not clearly and unmistakably delegate the determination of arbitrability to the arbitrator, the Arbitration Agreement and applicable law would nevertheless require that Borrower's claims be compelled to arbitration.

1    Ordinary state law principles of contract construction govern the analysis of
2 whether parties agreed to arbitrate and, hence, whether parties should be compelled
3 to arbitrate their claims. *First Options*, 514 U.S. at 944; *Wagner v. Stratton
4 Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Determining the parties' intent
5 to arbitrate is a question of law for the Court, and the parties' intentions are
6 generously construed as to issues of arbitrability. *See Parker v. Twentieth Century-
7 Fox Film Corp.*, 118 Cal.App.3d 895, 901 (1981); *Boys Club of San Fernando
8 Valley, Inc. v. Fid. & Deposit Co.*, 6 Cal.App.4th 1266, 1271-72 (1992) (compelling
9 arbitration of defendant surety's claims where a performance bond incorporated an
10 agreement to arbitration between the Borrower and principal).

11    There is no question that Borrower agreed to arbitrate her dispute with
12 Defendants. Borrower agreed to arbitrate in exchange for a loan from Springleaf.
13 The Loan Agreement contains nearly two pages of arbitration provisions. *See*
14 Andretich Decl., Ex. A, pp. 5-6. These provisions, coupled with Borrower's
15 signatures and initials, are objective evidence of Borrower's agreement to arbitrate.
16 *See id*., Ex. A at 1-6. Thus, even if the issue of arbitrability were not delegable to
17 the arbitrator, the only possible conclusion is that the parties agreed to arbitrate this
18 dispute.

19    **3.   Borrower's Claims Against Defendants Are "Covered Claims"
          Under The Arbitration Agreement.**
20

21    "[I]t has been established that, where the contract contains an arbitration
22 clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate
23 the particular grievance should not be denied unless it may be said with positive
24 assurance that the arbitration clause is not susceptible of an interpretation that covers
25 the asserted dispute. Doubts should be resolved in favor of coverage.' " *AT&T
26 Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986), quoting
27 *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-
28

83 (1960); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal.3d 312, 322-23 (1983).  Where the arbitration agreement is broadly worded, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Ibid*.

There is no doubt that the Arbitration Agreement here is broad enough to cover the parties' dispute.  It applies to "all claims and disputes arising out of, in connection with, or relating to . . . the closing, servicing, collecting, or enforcement of any transaction covered by this Arbitration Agreement" (including the Defendants' alleged debt collection efforts), as well as "any claim based on or arising under any federal, state or local law, statute, regulation, ordinance, or rule" (including Borrower's claims under the FDCPA and the Rosenthal Act).  *See* Andretich Decl., Ex. A, p. 5.  Accordingly, the Arbitration Agreement covers all of Borrower's claims in this case, however they are couched.

To be sure, the Arbitration Agreement covers Borrower's claims against Cramer, as well as Springleaf.  By its terms, the Agreement also covers and makes subject to binding arbitration claims against third parties involved in the same lawsuit as Springleaf, "provided that the third party is required to agree to resolve such claims by arbitration." Andretich Decl., Ex. A, p. 5.  By filing this motion, Cramer agrees to resolve the claims against him by binding arbitration.  Thus, those claims are covered under the Agreement, as well.

**C.  This Litigation Should Be Dismissed Without Prejudice Pending Completion of Arbitration In Accordance With Federal Law.**

If the Court grants the motion to compel, it should also dismiss the claims against Defendants.  "[T]he Ninth Circuit has held that 9 U.S.C. § 3 . . . gives courts authority to dismiss claims that are subject to an arbitration agreement." *Monzon v.*

*So. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 943 (N.D. Cal. 2011) (citing *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988)); *Thinkjet Ink Info. Res. Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the . . . court must be submitted to arbitration."  (Citations omitted)).  As all of Borrower's claims against Defendants are subject to binding arbitration, the Court should dismiss her claims.

**D.     Alternatively, This Litigation, Including All Discovery, Must Be Stayed Pending Completion of Arbitration To Avoid Prejudice And To Preserve Judicial Economy.**

The FAA expressly provides that where a valid arbitration agreement requires a dispute to be submitted to arbitration, the court *shall* stay the civil action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Moses H. Cone,* 460 U.S at 26 ("[S]tate courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the [FAA]."); *Collins v. Burlington N. R.R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement).  Thus, if the Court declines to dismiss the case outright in favor of arbitration, the litigation *must* be stayed until the arbitration is concluded.

Allowing the pending civil action and arbitration to proceed concurrently will prejudice all parties because inconsistent judgments could be reached in the concurrent proceedings.  Furthermore, staying the litigation would preserve judicial economy by avoiding the multiplicity of claims, discovery, costs and judgments that would result from allowing concurrent proceedings.

# V.
# CONCLUSION

Arbitration offers a fair, economical and prompt alternative for civil litigation, favored strongly under U.S. law.  Yet despite her contractual agreement to do so, and despite Defendants' good faith efforts, Borrower has refused to resolve her dispute with Defendants through arbitration.  The Court should grant Defendants' motion to compel arbitration and to dismiss, or at least stay, all litigation, including all discovery, forthwith.

DATED:  April 16, 2014                     Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation


By:     /s/ Austin B. Kenney
             Austin B. Kenney

Attorneys for Defendants
SPRINGLEAF FINANCIAL SERVICES, INC.;
THE LAW OFFICES OF TODD L. CRAMER